IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DONNA NOVAK, | ) | Case No.: 1:04CV2253 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Ann Aldrich |
| | ) | |
| METROHEALTH MEDICAL CENTER, | ) | |
| | ) | |
| Defendant. | ) | MEMORANDUM AND ORDER |
| | ) | |

This is an action for wrongful discharge, originally filed in the Cuyahoga County Court of Common Pleas. Plaintiff Donna Novak ("Novak") originally filed a three-count complaint against her former employer, MetroHealth Medical Center ("MetroHealth") of Cleveland, in which she alleged race discrimination and retaliation against her lawful filing of a workers' compensation claim, in violation of Ohio Revised Code §§ 4112 and 4123.90, as well as Ohio common law. After Novak amended her complaint to include alleged violations of the federal Family and Medical Leave Act, 28 U.S.C. § 2601, *et seq*. ("FMLA")(*see* Docket No. 7), MetroHealth removed the matter to this court.

Now before the court is a motion for summary judgment filed by MetroHealth (Docket No. 10). For the following reasons, the court grants this motion and enters judgment in MetroHealth's favor.

**I. Background**

Novak was employed by MetroHealth in various capacities beginning on August 3, 1987. Her most recent position was that of a financial counselor. As a MetroHealth employee, Novak was a

member of the American Federation of State, County and Municipal Employees, AFL-CIO, Local 3360 ("the Union"). As such, her employment was covered by the terms of the most current collective bargaining agreement in place between the Union and MetroHealth.

On August 16, 1999, Novak injured her back lifting a box of medical billings. Novak filed a Worker's Compensation claim against MetroHealth for a "sprain of the lumbar region." This claim was successful and unappealed. Subsequent to its resolution, Novak was assessed a "permanent partial disability rating" of 8%.

MetroHealth maintains a "no-fault attendance policy," which assigns points to employees based on the number of work hours missed due to unexcused absences. Under the program, work hours missed due to worker's compensation or FMLA claims are not counted as unexcused absences; no points are assessed to absent employees for such time. The MetroHealth policy includes established requirements for timely submission of medical certification by those employees seeking approval of leave time under FMLA. The policy mandates the issuance of various warnings and reprimands to employees who are assessed certain point totals, including termination of those who accrue 112 points[1]. This information was provided to Novak in her MetroHealth employee handbook. Novak began accumulating points under the MetroHealth policy in March of 2002. Novak does not dispute the assessment of points assigned to her in 2002, or many of the decisions regarding her absences in 2003. MetroHealth presents, in its motion, a lengthy and detailed summary of the disposition of many of Novak's leave claims, including Novak's alleged procedural errors. Although Novak has previously disputed a number of the instances in which points were assessed,

---

[1] Points are tabulated in accordance with an elaborate rubric, as set forth in Section VI of MetroHealth's "Attendance Standards" policy. Standard absences are assessed fewer points than absences on holidays or absences before or after paid time off, which are in turn assessed fewer points than no call/no shows. *See* Docket No. 13, Exhibit 3, at 36-38.

she limits her argument in opposition to MetroHealth's motion (*see* Docket No. 19) to discussion of the period March 22 through March 31, 2004.

Without submitting written documentation, Novak first called in to MetroHealth reporting various reasons for her March absences, including her adult daughter's delivery of Novak's grandchild, her lower back pain, and care of her adult daughter and grandson following delivery. Because unexcused absences during the period in question would have put Novak well over the 112-point threshold, MetroHealth scheduled a "pre-discharge" meeting for April 9, 2004, in accordance with the collective bargaining agreement. Novak, her Union representative, and MetroHealth agreed to postpone this meeting until April 16, 2004, so that Novak could gather FMLA documentation. Novak submitted three medical certification forms: one listing care of her adult daughter following the birth of Novak's grandson, one listing care of the grandson, and one listing Novak's back problems. MetroHealth denied FMLA leave based on these documents, finding them to be contradictory and legally insufficient under FMLA. MetroHealth also claims that at least one form – that listing symptoms for Novak's back problem – was fraudulently obtained (through "pressuring a receptionist") and presented. MetroHealth terminated Novak effective April 16, 2004.

The Union filed a grievance on Novak's behalf against MetroHealth on that same date, challenging the denial of Novak's FMLA leave and the accrual of her various points under the attendance policy. MetroHealth denied this grievance and upheld Novak's discharge. This suit followed.

## II. Discussion

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986); *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir.2004).

If the movant succeeds, the burden then shifts to the nonmoving party to demonstrate the existence of a material dispute as provided in Rule 56(e):

> [a]n adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). Parties opposing summary judgment must go beyond the pleadings and produce some type of evidentiary material in support of their position. *See Celotex,* 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, this Court must view the evidence in a light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970); *Hamby v. Neel*, 368 F.3d 549, 556 (6th Cir. 2004); *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson,* 477 U.S. at 248. Determination of whether an issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases, the Court must decide whether the evidence is such that "reasonable jurors could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict" or whether the evidence is "so one-sided

4

that [the moving party] must prevail as a matter of law." *Id.* at 252.

MetroHealth argues that it is entitled to summary judgment because no genuine issue of material fact exists with regards to Novak's claims of race discrimination, retaliation, or interference with her rights under FMLA. The court need only discuss Novak's federal claims.

Title 29 U.S.C. 2915(a) makes it unlawful for any employer to: "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided [for by FMLA]," or "to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful [by FMLA]." *Id*. To recover against MetroHealth for interference under FMLA, Novak must show: (1) that she was entitled to leave under FMLA; (2) that she gave notice of her intention to take leave under FMLA; and (3) that MetroHealth denied her the leave to which she was entitled. *Cavin v. Honda of America Mfg. Inc.*, 346 F.3d 713,719 (6th Cir. 2003)(adding requirements that parties are properly-qualified "employee" and "employer," which are not contested here).

To recover against MetroHealth for retaliatory discharge under FMLA, Novak must show: (1) that she availed herself of a protected right under FMLA; (2) that she was adversely affected by an employment decision; (3) a causal connection between (1) and (2). *Skrjanic v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001).

The court finds that MetroHealth has carried its burden and demonstrated the lack of genuine issues of material fact regarding both claims. Novak's claim for interference fails at the first stage of analysis, as the pleadings and other documents in the record do not show her entitlement to leave under FMLA.

Novak initially claimed that she was absent on March 24 and 25, 2004, as a result of flare-ups in her lower back pain. Apparently, she later submitted a form contending that the condition was

responsible for the entirety of her March 24-31 absence from work. A serious health condition rendering an employee unable to perform the functions of her position may entitle the employee to leave under the FMLA. *See* 29 U.S.C. § 2612(a)(1)(D).

However, MetroHealth was justified in ruling, as it did in denying Novak's grievance, that the materials she submitted were insufficient to establish the existence of a serious health condition. The physician cited on Novak's form, Dr. Monica Wloszek, had not treated Novak for her back injury. Dr. Wloszek denied both filling out the form related to said condition and told MetroHealth officials that she was not aware of any problems with Novak's back occurring in March 2004. In fact, Dr. Wloszek had not seen Novak as a patient since October 2003[2]. Given the suspicious and contradictory nature of this information, the court agrees that MetroHealth acted properly in finding that Novak had not established her entitlement to leave under FMLA for a serious health condition[3].

MetroHealth also properly denied FMLA leave with regard to Novak's adult daughter and her newborn grandson. FMLA provides for entitlement to leave "[i]n order to care for ... a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). The implementing regulations, 29 C.F.R. § 825.113(c), make

---

[2] Novak has submitted records showing her treatment by a different physician, one Dr. Patil, on March 30, 2004. However, these records do not establish the requisite need for absence during the entire period in question, and they do not appear to have been made available to MetroHealth at any time prior to the initiation of legal proceedings.

[3] As courts have frequently observed in similar settings, this does not mean that Novak was legally required to attend work on the days in question. *See, e.g., Brannon v. Oshkosh B'Gosh,* 897 F. Supp. 1028, 1035 (M. D. Tenn. 1995)("... Congress intended the FMLA to cover serious illnesses that last more than a few days ... Minor illnesses, on the other hand, should be addressed through the employer's sick leave policy[.]") Had Novak not exhausted the entirety of the unexcused absences allotted to her under MetroHealth's policy, her failure to satisfy FMLA requirements for the March 2004 period in question would have been of no consequence to her employment status.

clear that, for purposes of this section, "[s]on or daughter means a biological, adopted, or foster child, a stepchild, a legal ward, or a child of a person standing in loco parentis, who is either under age 18, or age 18 or older and incapable of self-care because of a mental or physical disability."*Id.* For a definition of "mental or physical disability, § 825.113(c)(2) refers to the definition of these terms as established by "the Equal Employment Opportunity Commission under the Americans with Disabilities Act (ADA), 42 U.S.C. [§] 12101 *et seq.*" *Id.*

Unfortunately, nothing in the record's characterization (and, *a fortiori*, nothing in Novak's proffered documentation) of Victoria Novak's very difficult pregnancy establishes her as disabled within the ADA's construction of the term.

> Although the Sixth Circuit has yet to address whether pregnancy itself is a disability, the majority of courts which have faced the issue have concluded that, by itself, pregnancy is not a disability within the meaning of the ADA. ... This approach comports with Sixth Circuit and Supreme Court authority, which has held that, to be disabling, the medical condition causing the limitation of a major life activity must be permanent, not temporary. *See, e.g., Toyota Motor Mfg., KY, Inc. v. Williams*, 534 U.S. 184, 122 S. Ct. 681, 691 (2002); *Hein v. All American Plywood Co., Inc.*, 232 F.3d 482 (6th Cir. 2000). In its Interpretative Guidance for Title I of the ADA, the Equal Employment Opportunity Commission has likewise stated, in its discussion of physical and mental impairments: "Other conditions, such as pregnancy, that are not the result of a physiological disorder are also not impairments." 29 C.F.R. § 1630, App. § 1630.2(h).

*Gover v. Speedway Super Am., LLC*, 254 F. Supp. 2d 695, 705 (S. D. Oh. 2002)(citations omitted).

Nor, it seems, would Victoria's struggle with postpartum depression qualify her as incapable of self-care. Taken in the light most favorable to Novak, the facts show that Victoria was diagnosed with and treated for postpartum depression for one week following the birth of Novak's grandson. The treatment involved medication for depression and the symptoms included depression and the fear of not being able to take care of the newborn. Affidavit of Victoria Novak, at 1. This condition, although deeply affecting, was evidently temporary, and did not render Victoria incapable of self-

7

care. Novak has presented no set of facts that indicate that Victoria was incapable of self-care.

MetroHealth has also established a lack of genuine issues of material fact with regard to its denial of Novak's claim for leave under the FMLA to care for her grandson. A plain reading of 29 C.F.R. § 825.113(c), *supra*, demonstrates that care of grandchildren not legally classified as a grandparent's ward does not entitle an employee to leave under FMLA. While care of a sick hospitalized child may qualify under the FMLA, the child was Victoria's and not Novak's.

Because Novak can show no set of facts which would entitle her to FMLA leave for the dates that she accumulated the points leading to her discharge, MetroHealth is entitled to summary judgment as a matter of law regarding the FMLA interference claim. MetroHealth is likewise entitled to summary judgment on Novak's claim of retaliation, as Novak entirely fails to present any evidence demonstrating a causal connection between her unsuccessful attempt to take FMLA leave and the decision to discharge her. Attendance points are assessed to all MetroHealth employees who take unexcused absences under the policy. MetroHealth has carried its burden of establishing that Novak's termination was caused entirely by her accrual of more than 112 points, and not on her various efforts to avoid the accrual.

## IV. Conclusion

For the foregoing reasons, the court hereby grants MetroHealth's motion for summary judgment, and enters judgment in favor of the defendant on Novak's FMLA claims.

Having resolved the federal claims, the court declines to exercise supplemental jurisdiction over Novak's state law claims (of worker's compensation retaliation and racial discrimination). These claims are dismissed without prejudice.

This order is final and appealable.

IT IS SO ORDERED.

                                              s/Ann Aldrich
                                              ANN ALDRICH
                                              UNITED STATES DISTRICT JUDGE

*Dated: **November 28, 2005***